## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## (GREENBELT DIVISION)

**KAVAN SHABAN,**
*6111 Roseland Dr.*
*Rockville, MD 20852, Montgomery County*

     *Plaintiff,*

    **v.**

**UNITED STATES OF AMERICA,**

     *Defendant.*

CASE NO.  8:26-cv-00844
Filed Electronically

JURY TRIAL DEMANDED

## COMPLAINT FOR REFUND AND ABATEMENT OF TRUST FUND RECOVERY PENALTY

Kavan Shaban, ("Plaintiff") by and through his counsel, Robb A. Longman, Erica Brady Gitlin and Longman & Van Grack, LLC and pursuant to 26 U.S.C. ("I.R.C.") § 7422, here by submits this Complaint for Refund against the United States of America ("Defendant"), seeking a refund and abatement of Trust Fund Recovery Penalties ("TRFPs") assessed under I.R.C.§ 6672, interest pursuant to I.R.C. § 6611, and reasonable costs and attorneys' fees pursuant to I.R.C. § 7430 and in support thereof states as follows:

### I.    INTRODUCTION

1.    On or about March 23, 2021, the Internal Revenue Service ("I.R.S." or "the Service") assessed TFRPs under I.R.C. § 6672 on the Plaintiff as a responsible person who willfully failed to pay over the trust fund taxes for all quarters of 2018 and 2019.  Plaintiff has paid a representative portion of the taxes owed in each quarter and now seeks a refund of these amounts and the abatement of the remaining TFRPs, pursuant to 26 U.S.C. § 7422, plus interest thereon, pursuant to 26 U.S.C. § 6611 and 6621, and attorney's fees, pursuant to 26

U.S.C. § 7430, against the Defendant the United States of America.

## II.   <u>PARTIES</u>

2.      Kavan Shaban, the Plaintiff, is an individual who is a Maryland resident and lives at 6111 Roseland Dr., Rockville, MD 20852, Montgomery County.

3.      The Defendant is the federal government, the United States of America, acting through its agency, the I.R.S.

## III.   <u>JURISDICTION</u>

4.      Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

5.      This Court has jurisdiction over this dispute under 28 U.S.C. § 1346(a).

6.      A taxpayer must comply with certain statutory prerequisites before it can properly invoke this Court's jurisdiction in a tax refund suit—namely, the taxpayer must pay a representative portion of each tax period due (as this case relates to assessed trust fund recovery penalties), the taxpayer must file an administrative refund claim with the IRS and then file a refund suit no earlier than six months from the date of filing the administrative refund claim and no later than two years from the date the IRS mails a notice of disallowance with respect to the claim. 26 U.S.C. §§ 6532(a) and 7422. Plaintiff has complied with those requirements before filing this complaint because he made a representative payment for all quarters due, filed Form 843, Claim for Refund and Request for Abatement, for each quarter at issue on or about May 25, 2025, and waited more than six months before filing this complaint.

7.      Plaintiff paid a representative portion of the TFRPs assessed for the quarters ending March 31, 2018; June 30, 2018; September 30, 2018; December 31, 2018; March 31, 2019; June 30, 2019; and September 30, 2019.  Plaintiff fully paid all amounts due for the quarters ending December 31, 2019.

8.    Plaintiff has not been notified that the IRS has allowed any of his Claims.

### IV.    STATEMENT OF FACTS

9.    Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

10.    At all relevant times, Plaintiff was the sole member of Cycloware, LLC, a Maryland limited liability company with its principal place of business in Bethesda, Maryland.

11.    Cycloware, LLC was the sole member of Persona Doctors HQ, LLC, a Maryland limited liability company with its principal place of business in Pikesville, Maryland.

12.    Plaintiff operated the entities together as a medical weight loss clinic. Persona Doctors HQ, LLC was the operational entity of the companies. It conducted the day-to-day operations, including, but not limited to, payroll taxes, paying expenses, leases for all companies, and all other operational matters through November 2019.

13.    In 2007, Plaintiff hired his brother, Shevan Shaban, as an employee to serve as the business manager of numerous companies, including Persona Doctors HQ, LLC.

14.    As the business manager, Shevan Shaban was responsible for the following activities, including, but not limited to, handling payroll, the filing of employment tax returns and making tax deposits, coordinating with vendors, paying bills, federal and state licensing, and filing the entities' tax returns.

15.    As the business manager, Shevan Shaban was responsible for filing and paying all payroll taxes from 2007 through late 2019.

16.    Shevan Shaban held this position until late 2019, when he was terminated by Plaintiff when Plaintiff discovered that Shevan Shaban had embezzled approximately $9

3

million.

17.    At the start of 2017, Shevan Shaban switched payroll service providers from Paychex to QuickBooks Online, and advised Plaintiff that QuickBooks Online was handling the payroll and employment tax payments.

18.    Shevan Shaban recorded the employment tax payments in QuickBooks Online, which Plaintiff verified on a regular basis.

19.    Plaintiff believed that the employment taxes were being paid because these amounts were recorded for employment taxes in Persona Doctors HQ, LLC's accounting software and corresponding payments were pulled from the business bank account.  In addition, Plaintiff met with Shevan Shaban regularly to provide updates about the companies' finances.

20.    At some point in 2017, Shevan Shaban turned off the option in QuickBooks Online to automatically make the employment tax payments.

21.    Plaintiff later discovered that trust fund taxes were not paid to the IRS, rather the money was transferred to accounts in Shevan Shaban's exclusive control.

22.    Shevan Shaban went to great lengths to hide his embezzlement of these funds, committing numerous illegal activities to cover his embezzlement including, but not limited to, identity theft to borrow money by setting up phony email addresses, the use of unauthorized notarized signatures, bank fraud by manipulating the companies' bank accounts, organizing new companies to divert funds and business, altering bank records, altering tax records, the filing of inaccurate tax records and altering other documents and establishing post office boxes to divert the information from the proper parties. Most relevant here is that Shevan Shaban hid the nonpayment of the employment taxes from Plaintiff and

the other family members by changing the mailing address with the IRS, state taxing agencies and banks while he altered the records so that it appeared the taxes were being paid. In addition, Shevan Shaban filed false tax returns for the companies, Plaintiff and other family members without their knowledge or consent.

23.     Plaintiff first discovered that something was amiss when he received two phone calls from collection agents for a bank on the same day in late 2019. The first agent informed him that a business checking account was overdrawn by approximately $180,000. The second agent informed him that a second account was overdrawn by approximately $85,000.

24.     Plaintiff reached out to the bank directly. The bank manager informed him that Shevan Shaban had been moving funds into and out of the business bank accounts without any business purpose, and sometimes these fund transfers were to accounts that were not related to Persona Doctors HQ, LLC or an account related to Plaintiff or any of his businesses.

25.     At this point, Plaintiff began investigating Shevan Shaban's actions.

26.     Plaintiff determined that Shevan Shaban had unlawfully taken upwards of $9 million from Persona Doctors HQ, LLC and the other related businesses.

27.     Plaintiff discovered that a portion of the amount stolen from the companies included employment tax payments.

28.     During Plaintiff's investigation, it was realized that although Shevan Shaban had recorded IRS payments for employment taxes, the funds had not been paid to the IRS; rather, the funds had been diverted to Shevan Shaban individually.

29.     Plaintiff immediately hired ADP to handle all payroll matters after he determined that these funds had not been paid.

30.     He also hired a company and eventually counsel and a certified public accountant to help review and correct the tax problems left by Shevan Shaban.

31.     On or about March 23, 2021, the Service assessed TFRPs for the periods ending March 31, 2018; June 30, 2018; September 30, 2018; December 31, 2018; March 31, 2019; June 30, 2019; September 30, 2019; December 31, 2019.

32.     On or about October 14, 2022, Plaintiff, Plaintiff's entities, and other related parties filed a lawsuit to recover the stolen funds from Shevan Shaban.

33.     In February and March of 2024, Plaintiff was subject to a levy. The levy resulted in payments of $37,757.98 being credited to the period ending March 31, 2019.

34.     Plaintiff submitted an Offer in Compromise based on doubt as to liability on March 1, 2024.

35.     The I.R.S. employee responsible for reviewing the Offer in Compromise indicated that Plaintiff took several steps to prevent fraud and to ensure that the employment taxes were being paid; however, she would be denying the Offer in Compromise.

36.     The denial of the Offer in Compromise was appealed on May 10, 2024.

37.     The Appeals Officer who reviewed the file and case law submitted by Plaintiff stated that even though Plaintiff did everything he could to ensure that the monies withheld from employees' wages were paid over to the IRS; however, because Plaintiff was the owner and that he was the only one assessed with the TFRP, the appeal was denied.

38.     On April 16, 2024, Plaintiff's Offer in Compromise was denied.

39.    On or about March 11, 2025, Plaintiff paid $20,393.86, the full amount owed for the period ending December 31, 2019. See Exhibit A.

40.    On or about May 6, 2025, Plaintiff paid a representative portion of the trust fund taxes owed in the amount of $5,000 for each of the periods ending March 31, 2018; June 30, 2018; September 30, 2018; December 31, 2018; March 31, 2019; June 30, 2019; and September 30, 2019. See Exhibits B - H

41.    On or about May 23, 2025, Plaintiff filed Forms 843, Claim for Refund or Abatement, by mailing the forms to the Department of the Treasury, Internal Revenue Service, Cincinnati, OH 45999-0030 via USPS Priority Mail. See Exhibits I – P.

## COUNT ONE

## CLAIM FOR REFUND AND ABATEMENT

42.    Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

43.    For an individual to be liable for TFRPs under I.R.C.§ 6672, it must be determined that the individual (1) was a "responsible person" and (2) the individual willfully failed to collect, account for, and pay over any taxes withheld from employees.

44.    In this case, Plaintiff did not willfully fail to collect, account for, or pay over taxes withheld from employees.

45.    The Service's assessment of the TFRPs for these periods was erroneous, arbitrary, and without evidentiary foundation because the nonpayment of trust fund taxes was not willful on the part of Plaintiff.

46.    Plaintiff made representative payments for the periods ending March 31, 2018; June 30, 2018; September 30, 2018; December 31, 2018; March 31, 2019; June 30, 2019; September 30, 2019; and fully paid the amount for the period ending

December 31, 2019.

47.    Plaintiff was also subject to a levy in February and March of 2024 that

resulted in payments totaling $37,757.98 being applied to the period ending March 31,

2019.

48.    Plaintiff timely filed Form 843 requesting a refund of the amounts paid

and abatement of the remaining amounts that have been assessed.

49.    Plaintiff's claims for refund and abatement total $738,475.30.  See table

below for detail.

| Period Ending: | Amount of Refund: | Amount of Abatement |
|---|---|---|
| March 31, 2018 | $5,000.00 | $88,355.04 |
| June 30, 2018 | $5,000.00 | $71,758.19 |
| September 30, 2018 | $5,000.00 | $60,483.29 |
| December 31, 2018 | $5,000.00 | $77,537.69 |
| March 31, 2019 | $42,757.98 | $48,793.28 |
| June 30, 2019 | $5,000.00 | $83,317.11 |
| September 30, 2018 | $5,000.00 | $215,078.86 |
| December 31, 2019 | $20,393.86 | |

50.    The IRS has failed to respond to Plaintiff's claims for refund within six

months of Plaintiff filing the claim for refunds.

## COUNT TWO

## CLAIM FOR COSTS AND CERTAIN FEES

51.    The Plaintiff incorporates by reference the allegations in the above

paragraphs.

52.    Plaintiff has improperly been assessed TFRPs for the periods ending March

31, 2018; June 30, 2018; September 30, 2018; December 31, 2018; March 31, 2019; June 30,

2019; September 30, 2019; and December 31, 2019.

53.    The Service has acknowledged that Plaintiff did not willfully cause the trust

fund taxes to not be paid.

54.     The Service has acknowledged that Plaintiff did what was reasonable to ensure that the proper amounts were being paid timely to the Service.

55.     Nevertheless, the Service continues to pursue the collection of TFRPs against Plaintiff.

56.     Section 7430(a)(2) of the Internal Revenue Code provides the prevailing party may be awarded reasonable litigation costs incurred in connection with such court proceedings.

57.     The Service has failed to act reasonably by continuing to pursue the collection of TFRPs against Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this court enter judgment in his favor and against the United States for:

a.     A refund and abatement Trust Fund Recovery Penalties for the periods ending March 31, 2018; June 30, 2018; September 30, 2018; December 31, 2018; March 31, 2019, June 30, 2019; September 30, 2019; and December 31, 2019 because Plaintiff was not a responsible party who willfully failed to collect, account for, and pay over the Service trust fund taxes withheld from employee wages;

b.     Reasonable litigation and administrative costs as allowed by law; and

c.     Such other and further relief as the Court may deem just.

d.     Plaintiff requests a jury trial for all issues triable by a jury pursuant to Federal Rule of Civil Procedure 38(b).

9

Dated: February 26, 2026                           Respectfully Submitted,

By: _____

Robb A, Longman, Esq.
USDC, MD Bar No. 15232
Longman & Van Grack, LLC
10411 Motor City Dr.
Suite 750
Bethesda, MD 20817
Phone: (301) 291-5027
Facsimile: (301) 291-5028
Email: rlongman@lvglawfirm.com

_____

Erica L. Brady-Gitlin, Esq.
USDC, MD Bar No. 31795
Longman & Van Grack, LLC
10411 Motor City Dr.
Suite 750
Bethesda, MD 20817
Phone: (301) 485-6485
Facsimile: (240) 343-1440
Email: ebrady@lvglawfirm.com